Goldenberg, 5-08-0464. You see, there are only two of us. The remaining justices on the Fifth District Appellate Court have recused themselves. In this case, it was a separate oral argument. We had a panel, we thought, but there was an additional recusal. A request has been made to the Supreme Court to assign an additional justice from another district who will then listen to these oral argument takes. Of course, these are all recorded. So when you're ready to proceed, you may do so. Mr. Bradford, correct? Thank you. May it please the Court. Yes, sir. Thank you. Thank you. Thank you. I'd like to start by saying that the defendant, in the case that admits liability prior to trial, suggested that the $200,000 settlement for the wrongful death was adequate for the daughter, mother, and father of the child to take, which was subsequently approved in a hearing. Didn't the father, though, say he wanted the case settled and he wanted to get it resolved and move on? He did, and the testimony at the trial indicated that he was told by the offending attorney in this case that if you do not take this settlement, you may receive nothing. Well, that's a fact. Well, except it's not a fact, Your Honor, where there's an admitted liability case. You have a wrongful death with admitted liability. He failed to inform his client, and instead informed his client, you may get nothing in this case, which was absolutely, as Paul said. Let me just, just to clarify a point. This was not just admitted negligence. It was admitted liability. Admitted liability. All right. In that regard, subsequent to that, the case was brought against the law firm, the law and professional corporation. The case was brought in Madison County. All the witnesses came from Madison County, save one, the plaintiff choosing with his attorney representing him at the time the case was tried in Madison County. The verdict and result therein was $675,000 by a Madison County juror. That was appealed to this court, and Judge Hopkins wrote a decision in regard to that appeal. That appeal primarily dealt, in Judge Hopkins' opinion, with one or two of the issues in regard to what was raised in the appeal, primarily in regard to Judge Hopkins' order for a new trial. Judge Hopkins went through the criteria that had always been contended by the defendant in this case, that the only means and the only proper forum to determine whether or not there was an adequacy of settlement of a wrongful death case brought against Alexander County, which is where the attorney chose to file the wrongful death case, was to be from an Alexander County juror. Now, we're not here to relitigate this court's decision, although in some ways I would like to, but we're not here to do that. What we're here to do is in regard to what that order subsequently caused in regard to the transfer of the case to Alexander County, and Judge Clark's interpretation of that order, the proclamatic portion of the order relates to a portion of the order that relates to the manifest way of the evidence in regard to expert testimony. Judge Hopkins reviewed the expert testimony in this case of Roy Dripps, who was the one trial in Madison County. He indicated in his decision that Mr. Dripps had never tried a case in Alexander County, never tried a wrongful death case in Alexander County, was not a practicing attorney in Alexander County, and that this case in regard to the proper forum should only be judged in light of Alexander County. There is a fatal error in regard to that decision, based upon two things. One, based upon the law, and secondly, based upon a misinterpretation of what this case was all about. Again, just for a point of clarification, as I understood Judge Hopkins' opinion in the prior case, he didn't say that the only testimony could be what would likely happen in Alexander County, the way I read it. What he said was that the testimony of Dripps revealed that he did not have a sufficient basis to render an opinion about what would happen in Alexander County, because he had no knowledge there. He didn't give any other. In other words, you're making a distinction between whether somebody could testify generally wrongful death cases are worth X anywhere. I'm saying that under our procedures and rules in Illinois, the question of expert testimony of a practicing attorney with over 20 years of experience handling wrongful death cases in the state of Illinois, a single court system is adequate in regard to wherever a case is tried. Now... Even if the individual has no... I mean, what we're talking about is, in essence, like the locality rule in medical malpractice cases. Yeah, exactly. That's what we're talking about. And does it apply in this type of legal malpractice case?  And the reason it doesn't is because there are a difference in regard to the standards of an attorney and the handling of a case from place to place in the state of Illinois. In this particular instance, when we talk about what that means, the Supreme Court in the state of Illinois, as recently as June of this year, has reaffirmed that expert testimony circumstances are for... It goes to weight, and that the jury is the judge of that weight, the sole judge of the weight to the testimony. If this court, and we were to argue about this, we could sit here and argue, well, okay, based upon Judge Hopkins' decision, who could be an expert in this case? And if we say, okay, then we have to have somebody with experience in Alexander County in regard to judging this case, the proclamating circumstance we get into there is that there is only one part-time practicing attorney in Alexander County at the present time. Well, you had Mike Johnson testify, though, who had tried a case and was aware of the circumstances of verdicts in Alexander County. Right, and his testimony was given the weight that should be given by the jury. Let me just clarify something. We've got a case within a case here. Yes. I mean, Judge Hopkins said that considering that the proper form of the underlying case was Alexander County, it's not the only form. Isn't that your primary argument, that the case should have never been filed in Alexander County when there were other forms that may have been more favorable to the plaintiff? That brings up a second problem in the case. The second problem, and you're right, the second problem in the case is one of the allegations and the testimony of the expert and experts in the file, and another attorney that took the stand, including the defendant, that this case could have been brought elsewhere. Missouri, federal court. It could have been brought to federal court in Missouri, state court in Missouri, both in regard to the case of Gerardo. It could have been brought to federal court in Vinton. It could have been brought to federal court in St. Louis. Okay. Now. I'm sorry. Let me ask a question. Okay. Sorry. We're peppering you with questions here. That's fine. We're looking for answers. Wasn't Drip's testimony at the original trial that it was negligence to file it in Alexander County? If, yes. Okay. It was, but it's an if situation. It's if the defendant's theory in the malpractice case is correct, then it was negligence. If this defendant is now standing before a jury and saying Alexander County is a bad place, and you can't get any money in Alexander County, and that's the knowledge that he's now using to argue to a jury. Say, well, you shouldn't have filed it in Alexander County. Then it begs the question, then why did you file it in Alexander County? Well, I guess the question is, and what I'm leading to, is if Drip's testimony was it was negligence to file it in Alexander County, but then Drip says, but I really don't know anything about verdicts in Alexander County, never handled a case there, and so forth, that's the basis upon Judge Hopkins' decision that he had an insufficient body of knowledge or experience or whatever to render that opinion. If Judge Hopkins was ranked at that seat. Well, okay, let's go to that then. That's the problem that Judge Clark was having, and you're having the same problem. What was Judge, we don't have him here, but what was Judge Hopkins say? Well, let me ask you this. Right or wrong, it's the law of this case, isn't it? I mean, do we get to go back at this point and reexamine and say, well, another panel of this court was wrong in this case? No, no, no, you do not. No, we're in Alexander County now, but we are not bound in regard to Judge Hopkins' comment that this is the only county, as Judge said. He said it's the proper form. He didn't say it was the only proper form for the underlying case. Right, and having made, quote, that judicial admission, then we get to the question about other forms, and it was brought to Judge Clark's attention when we were arguing this case. Judge Clark, we now have, if the allegations remain the same, we go to the jury, and the defendant argues the same, that this is a bad place to bring a case and it should have been brought somewhere else, it could have been brought somewhere else, and you believe that, now we have an Alexander County jury determining what a Benton County jury would do. Are we having, Mr. Chairman, Alexander County determining what a St. Louis attorney jury would do, or a Patriarchal jury would do, all of which are the risks that I'm willing to take in regard to the decision, because we didn't appeal Judge Hopkins' decision. We're bound to go to Alexander County, we're bound to try this case in Alexander County and Alexander County to give a verdict in this case and place upon the expert witnesses the weight that should be given to their testimony subject to cross-examination. You've not tried a case here, you know, although I think the evidence will show there hasn't been a minor's death case ever tried in Alexander County, that there has not been a step, that at the one particular time when you're arguing in front of Judge Clark, there hasn't been a civil trial in Alexander County in three years, at that point in time, it is just improper to, in due deference to Judge Hopkins, to invade the province of the jury in regard to Judge Clark. I mean, he put us in Alexander County and now we're in Alexander County with the jury. We have experts in the case. Now, differences, first trial, second trial, and why Judge Clark should not have granted summary judgment, which is the most drastic thing he could have done, where there was a mandate for a new trial in the case, was that plaintiff, in regard to and in light of Judge Hopkins' decision, modified and extended and expanded its Rule 213 disclosures regarding Roy Drips, specifically informing the defendant that Mr. Drips had now made a statistical study of wrongful death cases in Illinois and was prepared to testify in regard to Illinois wrongful death cases. Okay, now, that brings up a good point, because the way I read Judge Clark's decision, he's saying, okay, you said in the disclosure he's going to rely on the statistical analysis, but you provided Judge Clark with no affidavit or deposition or anything about that, upon which he could rely to deny the motion for summary judgment. You see what I'm saying? What did you give him? Did you give... I gave him a pleading. And that's it? No affidavit or anything? In regard to the standard for summary judgment, the pleadings are to be taken in the light He's supposed to assume that this statistical analysis is going to create an issue of fact? All he has to assume, Your Honor, is one thing, that there will be additional evidence presented at trial. The expert... Without you telling him what that evidence is at summary judgment? No, I do not believe that. The defendant has the right to take a discovery deposition if they wish. You have to show there's a genuine issue of material fact. How do you do that without telling the judge what this witness is going to testify about? And in supplementation to that, we also suggested that Jack Kerry was going to testify in the second trial if he had not testified in the first trial. Now, again, I haven't had a chance to review the record. Usually we don't get the record until after oral arguments, but I thought Jack Kerry, there was an indication in the file he would not testify. There's an indication in the file that Jack Kerry was raising an issue of a conflict of interest, which is for me to raise, which I did not raise and would not have because his deposition had already been taken because he had already testified. He testified to the inadequacy also. In regard to that, that testimony was not presented in the first trial, so there was an additional witness. That was before the court then, on summary judgment? Yes. So we have to find that Judge Park erred in finding that because you didn't file a 213 affidavit of drips, but for that fact, you would be entitled to go forward with your case, and summary judgment should not have been entered, and you would have been able to disclose drips as a 213 expert. We did. But you didn't provide the affidavit to support it. We did not provide an affidavit. Right. We provided a 213 disclosure sending out an opinion and the basis for the opinion. The law is clear that the pleadings are to be taken into consideration in regard to the granting of summary judgment. Our court is still ruled. Going back to that point, we're back to the experts. Is there adequate expert testimony? There is expert testimony. There was an additional expert going to testify in this trial that Judge Clark knew about, and Judge Clark had his discovery deposition, which was also submitted, which was Mr. Kerry. Confronted with that, Judge Clark overstepped his bounds. Now, I am not suggesting to you and will not suggest to you that Judge Clark, because we had this discussion, what did Judge Hopkins mean in terms of what he said? And there was a massive discussion as to, is Judge Clark saying we've got to have an Alexander County expert? And it appears that somehow that is the standard that one is trying to apply in this case, Your Honor. And that is just not the standard in Illinois. It is not the standard that should be used in any case. And it is not the standard, especially for a trial judge. Specifically, this motion brought, you know, back to the law of the case, and the second trial court is not bound by the laws necessarily of the first trial court, but the motions for summary judgment were identical to the motions for summary judgment that had been filed previously and ruled upon. The motion for a direct verdict after expert's testimony, was all after the conclusion of the case, was also brought up, ruled upon by the prior trial court. So, there is at least a conflict in that regard as to circumstances. The law is clear that it is a drastic means in regard to summary judgment. A disposal of litigation should be allowed only when the right of the moving party is clear and free from doubt. We believe that there is sufficient doubt here. We believe that in the circumstances of this case, that a jury has the right to make the determination, that the jury has the right to place the weight of the evidence in light of the experts that will testify, regardless of where that expert comes from or where, I mean, you know, we could have the same situation we've had throughout the state in regard to this, whether or not to bring a Chicago expert in, whether or not to bring a Madison County expert in, regardless of where you bring the expert in. In regard to a legal malpractice case, we're talking about a lawyer licensed in Illinois that could appear in any court in this state, has handled likely similar cases, and was going to testify as to the inadequacy of the verdict. The way I don't see the problem as being what you just said. I see the problem as whether or not you supplied the judge with evidence on summary judgment that you had that, that you had somebody who would testify. Now, the Jack Kerry situation is a little different, but on DRIPS, as I understand, Clark, he's saying, I don't have anything in the file that shows me that he would, how he would testify other than what he did before, which the appellate court already said wasn't enough. Well, except in regard to the, and to this extent, you know, when we talk about the law of the case, when we talk about the prior decision of the court, there is a serious question as to whether or not that's dicta or a ruling in regard to the case, as far as I'm concerned, as to what Judge Hopkins said or meant in regard to that. There is surely a substantial question in regard to Judge Hopkins suggesting that Alexander County is the only and proper forum and that the expert must be allowed in regard to that, which is an impossible standard to meet for any case in regard to this particular circumstance. Thank you. All right. Thank you, Mr. Brannon. You'll get a chance for rebuttal. And, Mr. Brannon, you may proceed, sir. I'm certainly glad we're not here to re-litigate the prior appellate court decision. I spent an awful lot of time doing that. But we do have the law of the case established. Judge Hopkins said what he meant in his decision, and I think that that needs to be honored in this case. I think it's important to understand exactly what the ruling was and what I'll call Hopkins 1. The court in Hopkins 1 found that the plaintiffs had failed to present evidence from properly qualified opinion witnesses as to the value of the minor's wrongful death claim in Alexander County, Illinois. Specifically, and this is a quote from the decision, Drift's testimony failed to establish that the plaintiffs could have recovered more than $200,000 for their Alexander County wrongful death of a minor case, and therefore failed to present sufficient to sufficiently establish approximate cause to sustain the jury's verdict. That's what Hopkins 1 said. The case was remanded at that point to Alexander County. The plaintiffs had certain decisions to make at that point. If he didn't lie, Hopkins 1, it's re-hearing the disappelling court. Option 2, petition to leave to appeal the Supreme Court. And if these arguments are being made today, that was the forum in which to make those. And I don't know, was there a petition to leave to appeal which was denied? There was not. So anyway, the decision stands. The decision stands. When the case is remanded to Alexander County, again, the plaintiffs have options. He can move it to a different county if he thinks he has another county. They didn't do anything. They basically went back to Alexander County and started to litigate the file at that point. I think at this point they've relived. They have waived any issues. Wait, wait. Hopkins 1 says that you're going to litigate the malpractice in the county where the case was settled. It doesn't say that the underlying case had to only be filed in Alexander County. That's true. So that argument that you had to go, that they went back to Alexander County and didn't choose to move it any place, that was not possible because Hopkins 1 says the malpractice is to be handled in Alexander over done. Right. That's what he said and that's what we're bound by then. Now, what happens at this point? Well, the plaintiffs are given a blueprint by Hopkins 1 about what they've got to do to fix their problems. As a matter of fact, if you look at Judge Clark's order, he even uses that term, given a blueprint, couldn't follow it or chose not to follow it. Well, what did they do? Basically, they repackaged what they had before. They repackaged DRIPS. And I think it's very important to look at what DRIPS actually said, what was actually presented to Judge Clark in DRIPS, and what was in the plaintiff's brief because they're two different things. What was given to Judge Clark in DRIPS' new disclosure, he will base his opinion on his experience and knowledge as a practicing attorney, author, and statistical research in Illinois and elsewhere. That's what the judge had because that's all that he had. Now, in the brief... In other words, nowhere in the file or anything that was presented to Judge Clark is there anything that tells us what the statistical research showed, you know, what or any conclusions he reached about any statistical research or anything about the statistical research. Exactly. Right. Research is not attached. Right. No affidavit, no study, no anything else. On page 15 of the plaintiff's brief, however, this is what he says. The plaintiff's alleged that, quote, DRIPS had new evidence and they had made a statistical study of minor death claims in Illinois and would testify statistically as to the value of a minor death claim. Now, that's in the brief, but that was not in the disclosure. The trial judge did not have access to that information. Your argument that the plaintiffs could have refiled this in an alternative form, though, it's not relevant to this action. I agree, Your Honor. I'm just saying that that's, you know, they never raised the point. They didn't try. It's not really relevant. So the big issue is that DRIPS wasn't properly disclosed with an affidavit under 213. Exactly. Well, is it a matter of proper disclosure or is it a matter of the judge having... Because even if the disclosure in the brief had been disclosed like it is in the brief, there still has to be an affidavit filed to oppose a motion for summary judgment showing what his testimony would be, wouldn't there? There does. Summary judgment. And there it's only kind of commingled 213 and 191. But really, in order to oppose a motion for summary judgment, you've got to put forward an affidavit and you've got to have testimony based on that which will oppose the motion. That wasn't done. And, Mr. Brandon, you don't have any dispute with what Mr. Bradford's argument that a licensed attorney in the state of Illinois from anywhere could go down and testify. I've reviewed this. I've studied whatever Alexander County cases, you know, even though I've never tried one here myself, but I've done a study of this. And in my opinion, the plaintiff should have got more than $200,000. I would agree with that, Your Honor. You're just saying it didn't happen here. I could have gone down there. I've tried cases in Alexander County. I've run over death cases in Alexander County. Any of a minor? Not of a minor. You'll end up a witness in this case instead of a... I haven't had a doubt, Your Honor. But in any event, a lawyer that is familiar with the area, familiar with the county, the people there, the factors that go into a jury verdict, could get a testimony there. The other thing that happened in this case, Mr. Bradford talked about, well, all that Hopkins won that they had was the actual courtroom testimony, and the deposition testimony could have been submitted from Dricks. If I think he fails to point out to this court or to Judge Clark, there would have been any difference in the deposition testimony from the courtroom testimony. So I think Judge Clark was correct in not allowing the 213 disclosure of Dricks. Dricks was proper because there was no 191 disclosure. And what about Jack Kerry? Well, if you look at the court order, the judge actually points out that Mr. Kerry disqualified himself and was not going to testify. But the other thing that's important about Kerry's disclosure, it doesn't really say what he's going to testify about. You have to go all the way back to the original disclosure in the first case before you find anything about Jack Kerry. And on that occasion, and it was simply repackaged in this case saying, see prior disclosure, it says, he will express his opinions based upon a review of documents, his many years as an active lawyer in the area, and his familiarity therewith. That's what the Kerry disclosure says. Now, does that tell anyone that he can express an opinion within a reasonable degree of legal certainty as to the value of this wrongful death? It apparently does not. The other thing that happened about Mr. Kerry, his deposition was taken on July 30, 2002. And though he was not called as a witness in this case, his deposition was available. He provided no testimony to ever testify in Alexander County. As a matter of fact, Jack Kerry said he tried two wrongful death cases in his entire career. Those were nearly more than 20 years ago. He also indicated that he had never, I think he said, when asked if he had ever been to Alexander County, he said, the closest I've been is Pulaski. Well, that's near. That's pretty close. It's not there. He didn't say he tried a case in Pulaski. There had to be something in there that he had some qualification to express an opinion as to the value of a minor's wrongful death. And that simply was lacking. And again, there's no 213 disclosure that sets out the requirements for Mr. Kerry. There's also no 191 affidavit from Mr. Kerry. So when Judge Clark looks at this, he has to go based on what's in the record beforehand. He doesn't find proper 213 disclosures. He also does not find any 191 affidavits. And he has on file beforehand a motion for summary judgment. At that point, Judge Clark asked the plaintiff's attorney not once, not twice, but three times if he wanted to present anything else to the court. The plaintiff said no. I'm going to stand on the record. He stood on the record. The court entered the summary judgment. The court summary judgment was correct in this case because the plaintiff, though given a blueprint, failed to provide to the court a sufficient basis based on expert testimony, which would have been presented in the courtroom, to demonstrate that there was not a basis for the award being $200,000 in this case. And I think that the court in this case should look at what happened in this case after its remand and make its decision on that basis. But on that basis, the defendant should prevail in the summary judgment. Thank you. Thank you, Mr. Brennan. Rebecca? The complaint made to this court is not what Judge Hopkins did. It is not for a review of Judge Hopkins' decision. It's for what standards did Judge Clark use in granting summary judgment, either based upon that case or based upon his understanding of the case. Specifically, both in terms of their brief and in terms of the argument made by the defendant in this case, was that the summary judgment should be granted as set forth in the defendant's memorandum. And as held by the appellate court, the plaintiff's expert, Roy Drips, was not qualified to testify regarding the amount of settlement as being sufficient or insufficient because he never handled a case in Alexander County. That's in Judge Clark's order. Yes. That is not the standard. That cannot be the standard. This court cannot uphold that kind of standard in regard to a judge placing himself in the position of denying an expert testimony based upon an erroneous standard of what that expert is going to testify to in regard to that. In Judge Hopkins' decision as to how this came about, is that the specific language that Judge Clark had a problem with was the plaintiff's expert provided no basis to support his testimony that the value of the underlying wrongful death of a minor case properly filed in Alexander County. Once you make those assumptions that we're going to Alexander County, that it was in Alexander County, that that's where everything has to be gauged by, when there are alternative allegations regarding other venues, when a licensed attorney testified in any place in the state of Illinois, and specifically, as I indicated, the Supreme Court has, as recently as June of this year, said the weight to be assigned to an expert opinion is for the jury to determine in light of the expert's credentials and the factual basis of his opinion. That's for a jury to determine. This case was remanded for a new trial. If the case was insufficient as a manifest way of the evidence case, Judge Hopkins could have ruled, that's the end of this case. We're finished. Instead, he went on, discussed the issue of forum, and on the basis of forum, sent this case to Alexander County, which we have no right to complain of now. We're willing to go back there. But this case deserves, these people deserve, a trial in Alexander County, when, and I do point to this just for the purposes of what you've done, a finding before any of this was discussed as to expert testimony or as to the forum, a finding by Judge Hopkins that the legal standard of care was not met by the defendant in this case. That is an opinion. And that was a finding in this court, that there was an outpractice in this case. Thank you. All right. Thank you, Mr. Bradford. All right, gentlemen, enjoyed reading your briefs, hearing your arguments. It's an interesting case, and we'll take it under advisement and enter a judgment.